# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN SPEARS,                                        No. 2:14-cv-0950-CMK-P

      Plaintiff,

  vs.                                                 ORDER

ADAM WEINER, et al.,

      Defendant.

_____/

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.   Pending before the court are plaintiff's complaint and several supplemental complaints, a motion for appointment of counsel (Doc. 6), and a motion for a temporary restraining order (Docs. 4, 7).  Plaintiff paid his filing fees on November 12, 2014, and also submitted an application to proceed in forma pauperis (Doc. 11).  Plaintiff has consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and no other party has been served or appeared in the action.

      As plaintiff has paid his filing fees, his application to proceed in forma pauperis will be denied, without prejudice.

/ / /

1

1       As to plaintiff's numerous supplemental and/or amended complaints, plaintiff is

2 informed that a complaint should be complete in itself.  As a general rule, an amended complaint

3 supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

4 Thus, where an amended complaint is filed, all claims alleged in the original complaint which are

5 not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th

6 Cir. 1987).

7       The Federal Rules of Civil Procedure provide that a party may amend his or her

8 pleading once as a matter of course within 21 days after serving it, or 21 days after service of a

9 responsive pleading.  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend its pleading

10 with leave of court or stipulation of all the parties.  Fed. R. Civ. P. 15(a)(2).  Where leave of

11 court to amend is sought, the court considers the following factors: (1) whether there is a

12 reasonable relationship between the original and amended pleadings; (2) whether the grant of

13 leave to amend is in the interest of judicial economy and will promote the speedy resolution of

14 the entire controversy; (3) whether there was a delay in seeking leave to amend; (4) whether the

15 grant of leave to amend would delay a trial on the merits of the original claim; and (5) whether

16 the opposing party will be prejudiced by amendment.  See Jackson v. Bank of Hawai'i, 902 F.2d

17 1385, 1387 (9th Cir. 1990).  Leave to amend should be denied where the proposed amendment is

18 frivolous.  See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

19       Here, plaintiff has not filed an amended complaint pursuant to Rule 15(a).  Such

20 an amended complaint would be complete in itself, not reference any previously filed complaints.

21 Rather, plaintiff has filed supplemental complaints wherein he attempts to add additional facts to

22 support the claims raised in the original complaint.  Even if the court were to construe plaintiff's

23 first supplemental complaint as an amended complaint, it is clearly not a complete complaint as it

24 only adds additional facts as to his denial of medical claim.  Beyond the first supplemental

25 complaint, he has not requested leave of court to file any amended complaint pursuant to Rule

26 15(a)(2).

1    Rule 15(d) permits a supplemental complaint to be filed, but only upon motion
2  and reasonable notice. Fed. R. Civ. P. 15(d).   Here, no motion requesting leave of court to file a
3  supplemental complaint pursuant to Rule 15(d) has been filed.  As such, plaintiff's supplemental
4  complaints (Docs. 5, 8, 9, 12, 14) are stricken as filed without leave of court.
5    The court is required to screen complaints brought by prisoners seeking relief
6  against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.
7  § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or
8  malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief
9  from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,
10  the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement
11  of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means
12  that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172,
13  1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the
14  complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it
15  rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege
16  with at least some degree of particularity overt acts by specific defendants which support the
17  claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is
18  impossible for the court to conduct the screening required by law when the allegations are vague
19  and conclusory.

20    ### I. PLAINTIFF'S ALLEGATIONS

21    In plaintiff's original complaint, he alleges violations of his due process rights,
22  and his First and Eighth Amendment rights.  The claims raised in the original complaint are
23  difficult to decipher.  It appears plaintiff is unhappy with the treatment he has received in jail,
24  and by various county and court employees involved in his criminal case, as well as some kind of
25  family law matter involving his children.  Specifically, he sets forth the following claims:
26  / / /

First, plaintiff claims his defense attorney and the district attorneys who are prosecuting his criminal case are conspiring together to violate his due process rights.  He claims defendant Weiner, his court appointed defense attorney, has hidden and manipulated discovery, intentionally delaying his due process.  Defendant Sudar, a deputy district attorney, has undermined his right to a fair trial, reasonable bail, is using illegal enhancements, and utilizing delay tactics.  Defendant Pierson, the District Attorney, is responsible for his staff's actions and to train staff properly.  Plaintiff also names a public defender, defendant Atwell, but does not explain how this individual violated his rights.

Next, he claims the county jail and staff have violated numerous rights, including subjecting him to prejudice and racism, interfering with his legal mail, denying him proper medical care, violating his equal protection rights, and retaliating against him.

He further claims the Public Guardian's office has taken his children away without proper due process, the family law facilitators, including defendant Slossberg, have prolonged his civil suit and conspired with the county clerks to interfere with his family law case.  The Superior Court clerks have denied him access to the courts, including losing his motions.  Finally, he alleges CSP and defendant Barbie have acted with prejudice and racism, withholding information from him, ignoring court orders, and causing him undue stress.

## II.  DISCUSSION

As to his complaint in general, § 1983 imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right.  42 U.S.C. § 1983 (1982).  "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes."  Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986).

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

### A.  CRIMINAL PROSECUTION

Plaintiff makes several allegations relating to the treatment he is receiving relative to an underlying criminal prosecution.  He names several different attorneys as defendants in this case including his court appointed attorney, a public defender, and the prosecuting District Attorney.  None of his claims against these individuals can survive screening.

As to defendant Weiner, plaintiff's court appointed defense attorney, and public defender Atwell, their representation of plaintiff in his criminal case does not subject them to liability under § 1983.  Public defenders act as an advocate for their client and are not acting under color of state law for § 1983 purposes, nor are attorneys appointed by the court to represent a defendant in place of the public defender.  See Georgia v. McCollum, 505 U.S. 42, 53 (1992); Polk County v. Dodson, 454 U.S. 312, 320-25 (1981).  Thus, all claims against defendants Weiner and Atwell must be dismissed.

As to the district attorneys, defendants Sudar and Pierson, who are apparently prosecuting plaintiff's criminal matter, it appears plaintiff is attempting to state a claim for malicious prosecution.  Such a claim is not cognizable under § 1983 unless the underlying conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding.  See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to malicious prosecution action which

5

1    includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor).

2    Here, plaintiff's complaint makes it clear that the underlying prosecution is currently on-going.

3    Thus, until such time as the underlying criminal prosecution is over, and any final conviction has

4    been overturned or plaintiff is not convicted, this claim is not cognizable.  Thus, defendants

5    Sudar and Pierson must be dismissed from this action.

6           In addition, prosecutorial immunity protects eligible government officials when

7    they are acting pursuant to their official role as advocate for the state.  See Imbler v. Pachtman,

8    424 U.S. 409, 430 (1976).  This immunity extends to actions during both the pre-trial and post-

9    trial phases of a case.  See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984).  State

10   prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official

11   capacity.  See Kalina v. Fletcher, 522 U.S. 118, 123-25 (1997).  Thus, to the extent plaintiff is

12   seeking relief against the district attorneys in their official capacity, such a claim would be

13   barred.  Similarly, supervisory personnel are generally not liable under § 1983 for the actions of

14   their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

15   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

16   violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

17   Supreme Court has rejected the notion that a supervisory defendant can be liable based on

18   knowledge and acquiescence in a subordinate's unconstitutional conduct because government

19   officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

20   and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

21   Thus, to the extent plaintiff's claims against the District Attorney are based on his supervisorial

22   position, such allegations fail to state a claim.

23          Finally, as to defendant El Dorado County, plaintiff fails to make any allegations

24   against the County itself.  As stated above, to state a claim under 42 U.S.C. § 1983, plaintiff must

25   allege an actual connection or link between the actions of the named defendants and the alleged

26   deprivations.  See Monell, 436 U.S. 658.  Here, plaintiff makes no allegations against the

1  County, and therefore fails to meet this pleading standard.  It would appear, however, that the

2  claim plaintiff seeks to make against the County relates to his criminal prosecution and would

3  necessarily be <u>Heck</u> barred as well.  Thus, plaintiff fails to state a claim against El Dorado

4  County, who shall be dismissed from this action.

5             **B.  JAIL TREATMENT**

6          Next, plaintiff's complaint attempts to outline how he has been mistreated by the

7  County Jail and staff.  He alleges denial of medical care, equal protection, retaliation, and racism.

8  However, these allegations are too vague and conclusory for the court to properly evaluate.  The

9  Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of

10  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that

11  claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d 1172,

12  1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

13  complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

14  rests.  <u>See</u> <u>Kimes v. Stone</u>, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege

15  with at least some degree of particularity overt acts by specific defendants which support the

16  claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

17  impossible for the court to conduct the screening required by law when the allegations are vague

18  and conclusory.

19          In addition, as stated above, plaintiff must set forth specific facts as to each

20  individual defendant's causal role in the alleged constitutional deprivation.  <u>See</u> <u>Leer,</u> 844 F.2d at

21  634.  As to his claims against the jail staff, plaintiff fails to identify any individual defendant.

22  Even if he is unaware of a particular defendant's name, he must still allege facts specific to each

23  DOE defendant, if that is how he must proceed.  Plaintiff is cautioned, however, that DOE

24  defendants are not favored in the Ninth Circuit as a general policy.  <u>See</u> <u>Gillespie v. Civiletti</u>, 629

25  F.2d 637, 642 (9th Cir.1980).  However, in situations where the identity a defendant is not

26  known prior to the filing of a complaint, "the plaintiff should be given an opportunity through

1  discovery to identify the unknown defendants, unless it is clear that discovery would not uncover

2  the identities, or that the complaint would be dismissed on other grounds." Id. (citing Gordon v.

3  Leeke, 574 F.2d 1147, 1152 (4th Cir.1978);  see also Wakefield v. Thompson, 177 F.3d 1160,

4  1163 (9th Cir. 1999).  Upon discovering the name of the "Doe" defendants, or any of them,

5  plaintiff will be required to promptly file a motion for leave to amend, accompanied by a

6  proposed amended complaint identifying the additional defendant or defendants. Plaintiff is

7  cautioned that undue delay in discovering defendants' names and seeking leave to amend may

8  result in the denial of leave to proceed against these defendants.

9          To the extent plaintiff is claiming a denial of proper medical treatment, he has not

10  alleged sufficient facts to state a claim.  However, it is possible that plaintiff will be able to cure

11  this defect, so he will be given an opportunity to file an amended complaint as to this claim.

12          Plaintiff is informed that the treatment a prisoner receives in prison and the

13  conditions under which the prisoner is confined are subject to scrutiny under the Eighth

14  Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509

15  U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . .

16  embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."

17  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh

18  and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison

19  officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and

20  personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official

21  violates the Eighth Amendment only when two requirements are met: (1) objectively, the

22  official's act or omission must be so serious such that it results in the denial of the minimal

23  civilized measure of life's necessities; and (2) subjectively, the prison official must have acted

24  unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.

25  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable

26  mind."  See id.

1    Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

2  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

3  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

4  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

5  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

6  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

7  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

8  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

9  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

10  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

11  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

12    The requirement of deliberate indifference is less stringent in medical needs cases

13  than in other Eighth Amendment contexts because the responsibility to provide inmates with

14  medical care does not generally conflict with competing penological concerns.  See McGuckin,

15  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

16  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

17  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

18  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

19  treatment, or interference with medical treatment, may also constitute deliberate indifference.

20  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

21  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

22    Negligence in diagnosing or treating a medical condition does not, however, give

23  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

24  difference of opinion between the prisoner and medical providers concerning the appropriate

25  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

26  90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff fails to allege in his original complaint what medical treatment he is not receiving, who is denying him the medical treatment, what his medical condition is, and any other specifics about this claim. Similarly, plaintiff fails to specify how his equal protection rights are being violated, and how he is being retaliated against.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010

1    (9th Cir. 1985).

2            In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

3    establish that he was retaliated against for exercising a constitutional right, and that the

4    retaliatory action was not related to a legitimate penological purpose, such as preserving

5    institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

6    In meeting this standard, the prisoner must demonstrate a specific link between the alleged

7    retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

8    Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

9    must also show that the exercise of First Amendment rights was chilled, though not necessarily

10   silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

11   2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

12   plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

13   took adverse action against the inmate; (2) the adverse action was taken because the inmate

14   engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

15   rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

16   408 F.3d at 568.

17           As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not

18   alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm

19   that is more than minimal will almost always have a chilling effect."  Id. at n.11.  By way of

20   example, the court cited Pratt in which a retaliation claim had been decided without discussing

21   chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to

22   discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

23   penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly

24   stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse

25   action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also

26   Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action

1  which is more than minimal satisfies this element.  Thus, if this reading of <u>Rhodes</u> is correct, the

2  chilling effect element is essentially subsumed by adverse action.

3          However, allegations of verbal harassment do not state a claim under the Eighth

4  Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner]

5  psychological damage."  <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987); <u>see also</u>

6  <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996), <u>amended by</u>  135 F.3d 1318 (9th Cir. 1998).

7  In addition, the prisoner must show that the verbal comments were unusually gross, even for a

8  prison setting, and that he was in fact psychologically damaged as a result of the comments.

9  <u>See</u> <u>Keenan</u>, 83 F.3d at 1092.

10          Finally, as to plaintiff's inclusion of the jail itself as a defendant, plaintiff is

11  informed that municipalities and other local government units are among those "persons" to

12  whom § 1983 liability applies.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).

13  Counties and municipal government officials are also "persons" for purposes of § 1983.  <u>See</u> <u>id.</u>

14  at 691; <u>see also</u> <u>Thompson v. City of Los Angeles</u>, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local

15  government unit, however, may not be held responsible for the acts of its employees or officials

16  under a respondeat superior theory of liability.  <u>See</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S.

17  397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not

18  of the actions of its employees or officers.  <u>See</u> <u>id.</u>  To assert municipal liability, therefore, the

19  plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

20  custom of the municipality.  <u>See</u> <u>id.</u>  A claim of municipal liability under § 1983 is sufficient to

21  withstand dismissal even if it is based on nothing more than bare allegations that an individual

22  defendant's conduct conformed to official policy, custom, or practice.  <u>See</u> <u>Karim-Panahi v. Los</u>

23  <u>Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1988).

24          As plaintiff's complaint is insufficient to state a claim against any of the county

25  jail staff, these claims will also be dismissed.  However, plaintiff will be provided an opportunity

26  to file an amended complaint against the county jail staff.  Plaintiff is cautioned that in so doing,

he must specifically allege who did what to him, and how that action violated his constitutional rights.

## C.  COUNTY COURT/FAMILY LAW MATTER

Finally, plaintiff alleges mistreatment relating to what appears to be a family law matter.  It appears he has lost custody of his children, and claims he has faced opposition in having his family law/divorce action proceed smoothly through the court system.  These claims are subject to pleading deficiencies also, but even more difficult to overcome is the immunity at least some of these defendants are entitled.

Judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts.  See Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam).  This immunity is lost only when the judge acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature.  See id.  Judges retain their immunity even when they are accused of acting maliciously or corruptly, see Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978), and when they are accused of acting in error, see Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  This immunity extends to the actions of court personnel when they act as "an integral part of the judicial process."  See Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385, 1390 (9th Cir. 1987).

Here, to the extent plaintiff claims the court clerks and family law facilitators acted to prolong his case, lost motions, and failed to respond to his letters in a timely fashion, the defendants would be immune from liability to the extent they were acting within their employment.  As such, the claims against them will be dismissed, without leave to amend.

However, as to his claims that he was denied due process by the public guardian, the Child Protective Services, and defendant Barbie, plaintiff may be able to state a claim.

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

1  property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

2  (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

3  deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

4  of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

5  defined, by existing rules that stem from an independent source – such as state law – and which

6  secure certain benefits and support claims of entitlement to those benefits.  See id.

7          Liberty interests can arise both from the Constitution and from state law.  See

8  Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

9  Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

10  itself protects a liberty interest, the court should consider whether the practice in question ". . . is

11  within the normal limits or range of custody which the conviction has authorized the State to

12  impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.

13          However, plaintiff's claim against these defendants is similarly vague and

14  conclusory.  Plaintiff fails to explain what happened, how his due process rights were violated,

15  and who was responsible for the violations.  He simply states his children were taken away

16  without due process.  Certainly there must have been some proceeding in which it was

17  determined that the children should have been removed from plaintiff's care.  However, he fails

18  to explain what occurred, what court orders were ignored, and what false documents were filed

19  with whom, if those are the incidents he alleges violated his due process rights.

20          As with the claims against the county jail staff, the claims relating to his due

21  process rights and his children being taken away will be dismissed with leave to amend.

22  However, as discussed more fully below, plaintiff will be required to decide which claims he

23  wishes to proceed with in this action and which, if any, he will file a new and separate action for.

24  **D.  TEMPORARY RESTRAINING ORDER**

25          In addition to his complaint and supplemental complaints before the court,

26  plaintiff has also filed motions for temporary injunctions.  Plaintiff is requesting this court

1    intercede on his behalf with the criminal proceedings in El Dorado County.  He claims that due

2    to the violations of his civil rights he is unable to receive a fair trial, and will be irreparably

3    injured if required to go forward with the criminal proceedings under the present conditions.  He

4    is requesting this court issue an order staying the El Dorado County Court criminal proceedings,

5    and transfer those proceedings to another court.

6               What plaintiff is really asking for is a writ of mandamus.  Under 28 U.S.C. §

7    1651(a), all federal courts may issue writs "in aid of their respective jurisdictions . . . ."  In

8    addition, the district court has original jurisdiction under 28 U.S.C. § 1361 to issue writs of

9    mandamus.  That jurisdiction is limited, however, to writs of mandamus to "compel an officer or

10    employee of the <u>United States or any agency thereof</u> to perform a duty . . . ."  28 U.S.C. § 1361

11    (emphasis added).  It is also well-established that, with very few exceptions specifically outlined

12    by Congress, the federal court cannot issue a writ of mandamus commanding action by a state or

13    its agencies.  <u>See e.g.</u> <u>Demos v. U.S. Dist. Court for Eastern Dist. of Wash.</u>, 925 F.2d 1160 (9th

14    Cir. 1991).  Where the federal court does have jurisdiction to consider a petition for a writ of

15    mandamus, such a writ may not issue unless it is to enforce an established right by compelling

16    the performance of a corresponding non-discretionary ministerial act.  <u>See</u> <u>Finley v. Chandler</u>,

17    377 F.2d 548 (9th Cir. 1967).

18               Plaintiff is not requesting this court order an action of any officer or employee of

19    the United States or an agency thereof.  Instead, plaintiff is requesting this court to compel a state

20    court to act, or refrain from acting, on the criminal charges against plaintiff.  This court has no

21    jurisdiction to do so under 28 U.S.C. § 1361.

22               To the extent plaintiff requests this court issue a temporary restraining order,

23    requiring the state court to cease its proceedings and/or transfer plaintiff's case to another court,

24    again, even if such an order were possible, plaintiff fails to meet the criteria for this court to issue

25    a temporary restraining order.

26    / / /

1    The legal principles applicable to requests for injunctive relief, such as a

2   temporary restraining order or preliminary injunction, are well established.  To prevail, the

3   moving party must show that irreparable injury is likely in the absence of an injunction.  See

4   Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res.

5   Def. Council, Inc., 129 S.Ct. 365 (2008)).  To the extent prior Ninth Circuit cases suggest a lesser

6   standard by focusing solely on the possibility of irreparable harm, such cases are "no longer

7   controlling, or even viable."   Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046,

8   1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he is

9   likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an

10  injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public

11  interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374).

12        Plaintiff argues he will be irreparably injured if the state criminal trial is allowed

13  to go forward.  However, irreparable injury is only one factor for the court to consider.  The court

14  is also required to take into consideration whether plaintiff is likely to succeed on the merits of

15  his case, whether the balance of hardships tips in his favor, and whether an injunction is in the

16  public interest.  As to the first factor, the court cannot say at this time whether or not plaintiff is

17  likely to succeed on the merits of his case.  If he has any possibility at all, given the discussion

18  above, it is likely to be against either the county jail staff for his treatment therein, or in relation

19  to his due process allegations for the removal of his children.  Neither of these claims, which are

20  the only ones plaintiff has the possibility of continuing in this action, are related to his underlying

21  criminal case.  Thus, it is clear plaintiff is not likely to succeed on the merits of his case as

22  related to the state courts and his criminal prosecution as those claims are dismissed herein.

23        Finally, the court notes that plaintiff's request for injunctive relief is in essence

24  against individuals who are not defendants in this action, namely the El Dorado Superior Court.

25  This court is unable to issue an order against individuals who are not parties to a suit pending

26  before it.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  For all

1  the reasons stated here, plaintiff's motions must be denied.

2  **E.  MOTION FOR APPOINTMENT OF COUNSEL**

3          Finally, plaintiff seeks the appointment of counsel.  The United States Supreme
4  Court has ruled that district courts lack authority to require counsel to represent indigent
5  prisoners in § 1983 cases.  See Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).
6  In certain exceptional circumstances, the court may request the voluntary assistance of counsel
7  pursuant to 28 U.S.C. § 1915(e)(1).  See Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991);
8  Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).   A finding of "exceptional
9  circumstances" requires an evaluation of both the likelihood of success on the merits and the
10 ability of the plaintiff to articulate his claims on his own in light of the complexity of the legal
11 issues involved.  See Terrell, 935 F.2d at 1017.  Neither factor is dispositive and both must be
12 viewed together before reaching a decision.  See id.

13         In the present case, the court does not at this time find the required exceptional
14 circumstances.  Plaintiff has demonstrated sufficient writing ability and legal knowledge to
15 articulate his claim.  The facts he has alleged and the issues he raised are not of substantial
16 complexity.  While seemingly extensive given the number of defendants and the variety of
17 allegations in the complaint, once plaintiff complies with this order, this case will be limited to
18 one of two claims; either concerning his treatment in the El Dorado County Jail, or his due
19 process rights relating to the removal of his children.  Neither appears to be sufficiently complex
20 to require the assistance of counsel at this time.  In his motion, plaintiff states that he has limited
21 legal knowledge, that his incarceration will hinder his ability to litigate this case, and he cannot
22 afford counsel.  The court finds this insufficient to establish that plaintiff cannot articulate his
23 claims without counsel.  In addition, given the facts as alleged in the complaint related to those
24 two possible claims, it does not appear likely that plaintiff will  succeed on the merits.  Thus,
25 plaintiff's motion for counsel will be denied.

26 / / /

**III. CONCLUSION**

Several of plaintiff's claims suffer incurable defects.  Those claims, and the defendants named therein, will be dismissed without leave to amend.  Specifically, plaintiff's claims related to the criminal prosecution case in El Dorado County, including Weiner, Sudar, Pierson, Atwell and El Dorado County, are <u>Heck</u> barred, and not subject to cure.  Those claims and defendants will be dismissed.  Similarly, the court clerks and family law facilitators named in relation to plaintiff's claims in his family law matter are protected by immunity, and will be dismissed without leave to amend.  However, other defective claims, such as those relating to the treatment he has been receiving at the county jail, and those related to his loss of custody of his children, are subject to cure, and plaintiff will be provided an opportunity to file an amended complaint to cure the defects noted above.

However, to the extent plaintiff is attempting to bring this action against several unrelated individuals on separate and unrelated claims, he will be required to separate those claims into unrelated cases.   The Federal Rules of Civil Procedure allow a party to assert "as many claims as it has against an opposing party," but does not provide for unrelated claims against several different defendants to be raised on the same action. Fed. R. Civ. Proc. 18(a).  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits."  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff's claims regarding his treatment at the county jail are unrelated to those surrounding the custody of his children.  Thus, those unrelated claims against different defendants, should be separated into different actions.  When plaintiff files his amended complaint in this case, he must choose which claims to proceed on in this case.  He may then choose to file a new, separate action on any other claims he may have.  He will not, however, be allowed to proceed on these two unrelated claims in this single action.

/ / /

1    Because it is possible that some of the deficiencies identified in this order may be

2    cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the

3    entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

4    Plaintiff is informed that, as a general rule, an amended complaint supersedes the original

5    complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following

6    dismissal with leave to amend, all claims alleged in the original complaint which are not alleged

7    in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

8    Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order

9    to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint

10   must be complete in itself without reference to any prior pleading.  See id.

11   If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

12   conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

13   Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

14   each named defendant is involved, and must set forth some affirmative link or connection

15   between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

16   164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17   Because some of the defects identified in this order cannot be cured by

18   amendment, plaintiff is not entitled to leave to amend as to such claims.  Plaintiff, therefore, now

19   has the following choices: (1) plaintiff may file an amended complaint which does not allege the

20   claims identified herein as incurable, in which case such claims will be deemed abandoned and

21   the court will address the remaining claims; or (2) plaintiff may file an amended complaint which

22   continues to allege claims identified as incurable, in which case the court will issue findings and

23   recommendations that such claims be dismissed from this action, as well as such other orders

24   and/or findings and recommendations as may be necessary to address the remaining claims.

25   Finally, plaintiff is warned that failure to file an amended complaint within the

26   time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's complaint (Doc. 1) is dismissed with limited leave to amend;

2.   Defendants Weiner, Sudar, Pierson, El Dorado County, Atwell, Family Law Facilitators, Slossberg, and Superior Courts Clerks, and the claims set forth against these defendants are dismissed without leave to amend;

3.   Plaintiff's supplemental complaints (Docs. 5, 8, 9, 12, 14) are stricken as filed without leave of court;

4.   Plaintiff shall file an amended complaint within 30 days of the date of service of this order, limited to related claims and/or defendants;

5.   Plaintiff's motion for counsel (Doc. 6) is denied;

6.   Plaintiff's motions for temporary restraining order (Docs. 4, 7) are denied; and

7.   Plaintiff's motion to proceed in forma pauperis (Doc. 11) is denied without prejudice as unnecessary at this time.

DATED:  March 26, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE